IN THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

GREGORY P.,[1]

        Plaintiff,                        Case No. 1:23-cv-01921-MTK

      v.                                 OPINION AND ORDER

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

_____

**KASUBHAI,** United States Magistrate Judge:

Plaintiff Gregory P. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"). This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). All parties have consented to allowing a Magistrate Judge to enter final orders and judgment per the Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 2. For the following reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI on December 1, 2020, alleging an onset date of June 1, 2017. Tr.[2] 196. His application was denied initially and upon reconsideration. Tr. 201, 207. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on March 15, 2023. Tr. 168–94. On April 24, 2023, the ALJ issued a decision finding Plaintiff not disabled within the meaning of Act. Tr. 151–62. The Appeals Council denied Plaintiff's request for review on October 23, 2023. Tr. 1–7. This appeal followed.

## FACTUAL BACKGROUND

Born in 1982, Plaintiff was 34 years old on his alleged disability onset date. Tr. 196. He has a high school education and has no past relevant work. Tr. 161.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400

---

[2] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to

determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141, 107 S.Ct. 2287; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of December 1, 2020. Tr. 153. At step two, the ALJ found that Plaintiff had the following severe impairments: psoriatic arthritis, chronic obstructive pulmonary disease (COPD), asthma, obesity, and depression. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. Tr. 154. The ALJ then assessed Plaintiff's RFC and found Plaintiff was capable of performing light work with the following limitations:

> [He can lift] 20 pounds occasionally and 10 pounds frequently; [carry] 20 pounds occasionally and 10 pounds frequently; [sit] for 6 hours and [stand] and [walk] for 6 hours. [He] can push/pull as much as he can lift/carry. [He] can handle items frequently with the left hand, and can handle items frequently with the right hand. He has fingering limitations frequently with the left hand, and has fingering limitations frequently with the right hand. [He] can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. [He] can never

work in humidity and wetness, never in dust, odors, fumes and pulmonary
irritants, never in extreme cold, and never in extreme heat. [He] is able to perform
simple, routine tasks. [He] can make and perform simple work-related decisions.
[He] can occasionally interact with supervisors, coworkers, and the public. [His]
Time Off Task includes in addition to normal breaks, off task 5 percent of time in
an 8-hour workday.

Tr. 156.

At step four, the ALJ found that the Plaintiff has no past relevant work. Tr. 161. At step

five, the ALJ found that, in light of Plaintiff's age, education, work experience, and RFC, there

were jobs that existed in significant numbers in the national economy that Plaintiff could perform

despite his impairments, including sub assembler, marker, and router. Tr. 162. Thus, the ALJ

concluded that the Plaintiff was not disabled within the meaning of the Act. *Id*.

## DISCUSSION

Plaintiff argues that the ALJ (1) failed to identify specific, clear and convincing reasons to

reject his subjective symptom testimony; (2) improperly evaluated the medical opinion of Dustin

Durham, M.D.; and (3) improperly rejected the lay witness testimony. Pl.'s Br. 5 (ECF 11).

## I.     Subjective Symptom Testimony

Plaintiff argues that the ALJ erred in rejecting his subjective symptom testimony because

he provided only a summary of the medical record rather than specific reasons to reject

plaintiff's testimony. Pl.'s Br. at 5–12.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL

5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony

about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th

Cir. 2009). First, the claimant must produce objective medical evidence of one or more

impairments that could reasonably be expected to produce some degree of symptoms.

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the

impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)*.* In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208*.* To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

### A.    Plaintiff's Testimony

At the hearing, Plaintiff reported that he could not work due to his psoriatic arthritis, which causes pain in the joints throughout his body, shortness of breath, and depression. Tr. 177, 181, 183. Plaintiff testified that his pain gradually increased over time, spreading from his back to the ends of his extremities. Tr. 177. He explained that he has difficulty maintaining his grip and that the psoriatic arthritis has caused a deformity with his fingernails. *Id*. To deal with his pain, Plaintiff stated that he lies down for 15–20 minutes frequently throughout the day, that he

can only sit for 15–20 minutes and stand for 15 minutes before needing to change position, and

that he can only maintain his grip for a few minutes before experiencing pain. Tr. 178–79, 181.

He stated that, when doing chores such as washing dishes, mopping, and sweeping, he can only

do those activities a few minutes at a time and must take breaks, usually spreading his chores out

over several days. Tr. 186. Plaintiff previously received infusions to help treat his arthritis but

has since moved to taking Otezla because the infusions made him feel sick and weak. Tr. 179–

80. He reported that Otezla has no side effects but also does not help his pain. Tr. 180.

      When asked about his shortness of breath, Plaintiff stated that after five or ten minutes of

walking, he must sit. Tr. 181. He previously used his nebulizer three times a day, but recently he

has only been using it at night, before sleep. Tr. 181–82. Each treatment with his nebulizer took

15–20 minutes, and that increased activity leads to more usage. Tr. 182. Plaintiff also reported

that he is in the process of beginning treatment at a respiratory clinic and that he only stopped

smoking at the beginning of 2023. Tr. 183.

      When asked about his depression, Plaintiff stated that he "curls into a ball" and "rides

that wave. . . until it stops." Tr. 183. He explained that he treats his general depression with

music, but that if he is depressed about something specific, then he will "just lay there, do

absolutely nothing," until it passes. Tr. 183–84. He further explained that his depressive episodes

last a couple of hours to multiple days, and he experiences these episodes multiple times per

week. Tr. 184. While he does not have problems interacting with the general public, he tries to

stay away from crowds. Tr. 184–85. He also stated that he can focus and concentrate "fairly

well." Tr. 185.

      The ALJ determined that her medically determinable impairments could reasonably be

expected to produce some degree of symptoms, but his "statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 1219. The ALJ reasoned that Plaintiff's testimony concerning her mental limitations was inconsistent with evidence of his daily activities, as well as evidence from the medical record. Tr. 157–58.

### B.    Daily Activities

Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639.

Plaintiff stated that it takes him days to complete household chores, such as sweeping, mopping, and doing dishes, and that he has to take several breaks while doing them. Tr. 186. He also stated that while he does grocery shop, he uses a motorized cart. Tr. 181, 412. In discounting Plaintiff's testimony because of his daily activities, the ALJ cited Plaintiff's ability to prepare meals daily, feed animals, sweep, do dishes, text, shop in stores, and drive. Tr. 157. It is unclear how these activities meet the threshold for transferrable work skills or how they contradict plaintiff's testimony. A plaintiff cannot be penalized for trying to live some semblance of a normal life, and an ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)).

In sum, because the ALJ did not connect those activities to any symptom or the degree of any symptom alleged by plaintiff, he cannot rely on Plaintiff's activity level to discount his testimony regarding his impairments. *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)

("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). Accordingly, Plaintiff's activity level does not provide a clear and convincing reason for rejecting Plaintiff's testimony.

### C.    Inconsistent Medical Record

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *see also Smartt*, 53 F4th at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). In sum, "an ALJ cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence 'fully corroborat[ing]' every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (quoting *Burch*, 400 F.3rd at 681)).

As discussed above, Plaintiff stated that he experiences pain throughout his joints, extending down into the tips of his extremities. The pain is such that he cannot stand, walk, or sit

for any significant length of time before needing to change positions or lie down. He cannot maintain his grip for more than a few minutes, suffers from shortness of breath after approximately ten minutes of just walking, and experiences depressive episodes several times a week that last for a few hours to days at a time.

The ALJ concluded that Plaintiff's testimony was inconsistent with the medical evidence because it was inconsistent with the medical evidence of record. In an attempt to support his position, the ALJ provided a summary of Plaintiff's medical history. Tr. 157–58. For example, the ALJ pointed to Plaintiff receiving injections for his psoriatic arthritis in November 2020, in which Plaintiff reported no improvement in pain. Tr. 444. Plaintiff continued injections in 2021, reporting that his new treatment had "not helped yet," and he was still reporting ongoing arthralgias in his right hand, back, hips and knees, along with accompanying stiffness and decreased ambulation. Tr. 504. Examinations also showed tenderness and swelling in his fingers, crepitus in his knees, discomfort with range of motion in his hips, antalgic gait, and synovitis. Tr. 505, 527, 553–54. Plaintiff reported worsening pain and fatigue in December 2021, along with a repeat of crepitus, hip discomfort, and psoriatic changes in his right hand, while also having normal gait and strength. Tr. 545. After six months of seemingly no improvement, Plaintiff changed medications in June 2022, and, as of December, appeared to show some improvement. Tr. 538, 542.

For Plaintiff's asthma and breathing impairments, the ALJ pointed to a report from April 2020 showing that Plaintiff's asthma was improving with treatment and that smoking cessation was also recommended. Tr. 491. Plaintiff was then seen in March 2022, in the emergency department for shortness of breath but examinations showed only diffuse breathing, and he was subsequently given nebulizer treatment before being discharged. Tr. 679–80. Plaintiff was seen

again that summer with diffuse wheezing, little air movement, little difficulty speaking while breathing, no significant increased work of breathing, and lots of sonorous bronchos lung sounds. Tr. 739, 743. In October 2022, Plaintiff reported continuing shortness of breath along with multiple coughing fits a day. Tr. 567. He was subsequently diagnosed with COPD. Tr. 570. In December 2022, Plaintiff was seen in the emergency department where he presented with dramatically increased respiratory effort, coarse and wet sounding breath, and diffuse rhonchi. Tr. 586, 589. He was subsequently discharged after a few days of treatment and improved respiratory function. Tr. 627. A follow up in January 2023 showed only moderately diffuse diminished breath sounds bilaterally, and by February he had no wheezing, no rhonchi, normal auscultation, and normal breathing effort. Tr. 583, 720. The ALJ also noted that Plaintiff carried an obesity diagnosis. Tr. 719.

While the ALJ provided a detailed summary of Plaintiff's medical records, he never tied any of these records back to Plaintiff's testimony, nor provided actual reasons they were inconsistent. Notably, the ALJ also made no mention of Plaintiff's depression. The ALJ's citation to these objective findings is not "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958. As such, the ALJ's rejection of Plaintiff's subjective symptom testimony as inconsistent with the objective medical evidence was not supported by substantial evidence.

## II.    Medical Opinions

Plaintiff alleges that the ALJ improperly rejected the medical opinions of Dustin Durham, M.D. Pl.'s Br. at 12. Specifically, he argues that the ALJ's reasoning for rejecting his provider's medical opinions was unsupported by substantial evidence, including that inconsistencies and daily activities were not proper bases for rejection. Pl.'s Br. at 13–16.

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §

404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

"An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford v Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) A medical opinion presented in "check-the-box questionnaire" form cannot be rejected on that basis alone, but only when the questionnaire "do[es] not contain any explanation of the bases of their conclusions." *Ford*, 950 F.3d at 1155 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740–41 (9th Cir. 2023) (noting that the Ninth Circuit has "accepted discounting of a medical opinion set forth in a checkbox form with little to no explanation.").

## A.    Dustin Durham, M.D.

Plaintiff first argues that the ALJ improperly discredited Dr. Durham's opinion because the ALJ: (1) relied on "objective" findings that are irrelevant to Plaintiff's symptoms and diagnoses; (2) failed to take Plaintiff's obesity into account; (3) improperly relied on Plaintiff's daily activities; and (5) failed to provide substantial evidence that Plaintiff would not be absent two days per month due to shortness of breath Pl.'s Br. at 13–16. This Court agrees in part and disagrees in part.

Dr. Durham provided a medical opinion on March 28, 2023. Tr. 763. In his opinion, Plaintiff suffered from COPD exacerbated by smoking, severe persistent asthma, psoriatic arthritis, chronic low back pain, and morbid obesity. Tr. 759–60. He opined that Plaintiff could

walk two city blocks before needing to rest, could sit for one hour at a time, could stand and walk for 10–15 minutes at a time, could sit for five hours in an eight-hour workday, and could stand and walk for one- to -two hours in an eight-hour workday. Tr. 761. He also noted Plaintiff would need one- to -two unscheduled breaks lasting up to 10 minutes due to back stiffness. Tr. 762. Notably, Dr. Durham found that Plaintiff would not need to lie down or rest periodically during the day, but he would need to be able to change positions at will. Tr. 760, 762. Dr. Durham believed Plaintiff could never lift 50 pounds, occasionally lift up to 20 pounds, and frequently lift 10 pounds. Tr. 762. He also believed Plaintiff had no limitations in his ability to handle, finger, and or reach. *Id*. Lastly, Dr. Durham noted Plaintiff would be off task between zero and five percent in an eight-hour day and that he would need to miss two days of work per month due to shortness of breath. Tr. 763.

The ALJ found Dr. Durham's opinion unpersuasive because it was inconsistent with his daily activities, inconsistent with other medical evidence of record, and provided no explanation as to why shortness of breath would cause absenteeism. Tr. 159–60. Plaintiff argues that the ALJ relied on irrelevant "objective" findings, that the ALJ failed to take Plaintiff's obesity into account, that Plaintiff's daily activities do not provide adequate support, and that substantial evidence supports Dr. Durham's absenteeism finding.

Plaintiff's first argument is unavailing. Plaintiff argues that the ALJ "relied on objective findings that are not relevant to [Plaintiff's] symptoms and diagnoses." Pl.'s Br. at 14 (internal quotations omitted). However, Plaintiff does not explain how the relied upon objective findings are irrelevant. Plaintiff may suffer from varying levels of pain and objective evidence can serve as evidence either in support or contradiction and is specifically necessary to the determination of whether Plaintiff is disabled or capable of engaging in some form of work. The argument is

undeveloped and without specificity, and as such is without merit. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

Plaintiff's second argument, that the ALJ failed to take Plaintiff's obesity into account, is appropriate. The ALJ mentions that Plaintiff's obesity is taken into account four times throughout the opinion. *See* Tr. 154, 158–60. However, the ALJ fails to explain how obesity was evaluated and factored into the opinion. The ALJ rejected Dr. Durham's findings as they related to Plaintiff's limitations regarding his ability to sit, stand, walk, shift positions, and need for additional breaks. Tr. 159. Considering Dr. Durham made these findings with Plaintiff's obesity in mind, and the ALJ does not explain how he incorporated Plaintiff's obesity into the opinion, it was improper to reject Dr. Durham's limitations.

Plaintiff's third argument, that his daily activities do not serve as a valid reason to reject Dr. Durham's medical opinion, is also supported. As noted earlier in this opinion, the ALJ failed to adequately evaluate Plaintiff's daily activities and explain how those activities undermined his testimony. Likewise, the ALJ also fails to explain how Plaintiff's daily activities provide support for rejecting Dr. Durham's opinion.

Plaintiff's last argument, that his shortness of breath supports Dr. Durham's finding that he would be absent two days per month, is unavailing. Plaintiff points to evidence of symptoms of shortness of breath, such as decreased breath sounds, coarse rales, diffuse wheezing, the presence of rhonchi, and diminished breath sounds, but fails to explain how any of that supports Plaintiff's absenteeism. The ALJ pointed to evidence of Plaintiff having normal respiratory function. Tr. 492, 720, 725, 730. What Plaintiff asks for is a reweighing of the evidence, but "[w]here the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)

(citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

In sum, the ALJ properly rejected Dr. Durham's opinion as it pertained to Plaintiff's absenteeism, however the ALJ erred by failing to provide substantial evidence in support of rejecting the entirety of Dr. Durham's opinion.

## III.    Lay Witness Testimony

Plaintiff contends that the ALJ erred by failing to properly address the lay witness testimony provided by plaintiff's in-laws, Mr. and Mrs. Blodgett. Pl.'s Br. at 16–18.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation omitted). "Lay witness testimony is competent evidence and cannot be disregarded without comment." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").[3]

The ALJ makes a single mention of the lay witness testimony, stating that "the

---

[3] Citing in the revised regulations for medical source opinions and the Ninth Circuit's unpublished opinion in *Fryer v. Kijakazi*, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022), the Commissioner argues that the ALJ is no longer required to provide "germane reasons" for discounting lay witness testimony. Def. Br. 13-14. This Court disagrees that the new regulations provide a basis to reject the Ninth Circuit's longstanding precedent concerning "germane reasons."  *See Donna B.S. v. O'Malley*, No. 6:22-CV-1571-SI, 2024 WL 3534431, at *7 (D. Or. July 25, 2024) (so holding).

undersigned has considered the allegations of Mr. and Mrs. Blodgett, as well as the claimant, these findings, in combination with the medical evidence as cited below, are not entirely consistent with the record." Tr. 157. However, as discussed earlier in this opinion, the ALJ improperly rejected Plaintiff's subjective symptom testimony on this basis. Therefore, the ALJ cannot reject the lay witness testimony on that same basis and has failed to provide a reason germane to the witnesses.[4] As such, the ALJ has erred.

## IV.     Remand

When a court determines the Commissioner erred in denying benefits, the court may affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). In determining whether to remand for further proceedings of the immediate payment of benefits, the Ninth Circuit employs the following "credit-as-true" standard when the following requisites are met: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the plaintiff disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). If all three requisites are met, the court may remand for benefits. *Id*. However, even if all of the requisites are met, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled. *Id*. at 1021.

Here, the first requisite is met because the ALJ erroneously rejected Plaintiff's subjective symptom testimony, Dr. Durham's medical opinion, and the lay witness testimony provided by

---

[4] This Court need not address the content of the lay witness testimony because the ALJ's reasoning cannot support their rejection no matter their content.

Plaintiff's in-laws. However, the record is not free from conflicts and ambiguities. Specifically, the extent of Plaintiff's impairments are not clear from the record. For example, Plaintiff disregarded recommended treatment to cease smoking despite it exacerbating his breathing issues, and that despite being in pain and suffering from shortness of breath, he engages in vigorous activity, exercising more than 20 hours per week. Tr. 718. Further proceedings would be useful in resolving the given example and others like it throughout the record. On remand, the ALJ must reevaluate Plaintiff's subjective symptom testimony and provide specific, clear and convincing *reasons* as to why Plaintiff's impairments were discounted or accept them. The ALJ must also reevaluate Dr. Durham's medical opinion and adequately explain how Plaintiff's obesity was taken into account. The ALJ must also reevaluate the lay witness testimony, and either accept them or provide germane reasons for rejecting them. Last, the ALJ must, if necessary, reformulate the Plaintiff's RFC, and obtain further VE testimony.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Court REVERSES and REMANDS for further proceedings.

IT IS SO ORDERED.

DATED this 20th day of December 2024.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge